FILED
CLERK, U.S. DISTRICT COURT

2004 OCT 26  P 4: 46

DISTRICT OF UTAH
BY
DEPUTY CLERK

L. Richard Musat, Esq. (Admitted Pro Hac Vice)
Mark A. Pottinger, Esq. (Admitted Pro Hac Vice)
Treece, Alfrey, Musat & Bosworth, P.C.
999 Eighteenth Street, Suite 1600
Denver, CO  80202
Telephone: 303-292-2700
Fax: 303-295-0414

R. Brent Stephens, Esq. (#3098)
Snow, Christensen & Martineau, P.C.
10 Exchange Place, Eleventh Floor
P.O. Box 45000
Salt Lake City, Utah 84145
Telephone: 801-521-9000
Fax: 801-363-0400

Attorneys for Defendant
West Star Aviation, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

WESLEY WHITE, a minor, by and through
his parent and natural guardian, MICHELLE
WHITE, for herself, both as heir of JOEL
WHITE, and as Personal Representative of
the Estate of JOEL WHITE, Deceased,

     Plaintiffs,

     v.

THE PIPER AIRCRAFT CORPORATION IRREVOCABLE
TRUST, et al.,

     Defendants.

**Civil No. 2:99-CV-0896B**
**Judge Dee V. Benson**
**Magistrate Judge Alba**

---

**DEFENDANT WEST STAR AVIATION, INC.'S COMBINED SUPPLEMENTAL
RESPONSE TO PLAINTIFFS' RULE 41(a)(2) MOTION FOR DISMISSAL OF PIPER
AIRCRAFT CORPORATION IRREVOCABLE TRUST; RESPONSE TO DEFENDANT
THE PIPER AIRCRAFT CORPORATION IRREVOCABLE TRUST'S MOTION FOR A
PROTECTIVE ORDER BARRING THE RULE 30(b)(6) DEPOSITION SOUGHT BY
DEFENDANT WEST STAR AVIATION, INC.; AND MEMORANDUM IN SUPPORT OF
MOTION FOR RULING AND BRIEFING ON ISSUE OF SETTLEMENT SET-OFF**

---



# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ................................................................................................1

STATEMENT OF FACTS ....................................................................................................1

SUMMARY OF ARGUMENT ..............................................................................................2

ARGUMENT ...................................................................................................................3

    I.      In the absence of an unqualified stipulation from Plaintiffs concerning the contents of the special verdict form, and given the lack of clarity of Utah precedent on this issue, this Court should expressly rule that, before the Piper Trust can be dismissed from this case, the Piper Trust must be included on the special verdict form...................................................3

    II.     The Piper Trust must allow West Star to examine a representative of the Piper Trust about non-privileged matters in a videotaped trial preservation deposition .......................................................6

    III.    Plaintiffs' settlement with the Piper Trust raises the risk of a double recovery by Plaintiffs, which Utah law prohibits, and so the parties should be required to brief, and this Court should resolve prior to trial, the issue of how that settlement should be set-off from any award of damages by the jury.........11

CONCLUSION ..............................................................................................................13

CERTIFICATE OF SERVICE ...........................................................................................14

Defendant West Star Aviation, Inc. ("West Star"), by and through its attorneys, Treece, Alfrey, Musat & Bosworth, P.C., and Snow, Christensen & Martineau, P.C., respectfully submits its Combined Supplemental Response to Plaintiffs' Rule 41(a)(2) Motion for Dismissal of Piper Aircraft Corporation Irrevocable Trust; Response to Defendant The Piper Aircraft Corporation Irrevocable Trust's Motion for Protective Order Barring the Rule 30(b)(6) Deposition Sought By Defendant West Star Aviation, Inc.; and Memorandum in Support of Motion for Ruling and Briefing on Issue of Settlement Set-Off, and states as follows:

## STATEMENT OF THE ISSUES

1.  Whether, if the Piper Trust is dismissed from this litigation, Utah law requires that the Trust appear on the special verdict form submitted to the jury.

2.  Whether West Star may examine the Piper Trust's representative in a videotaped trial preservation deposition.

3.  In what manner any award of damages by a jury must be set-off by the amount of the Piper Trust's settlement with Plaintiffs so that Plaintiffs do not receive a double recovery, which is prohibited by Utah law.

## STATEMENT OF FACTS

This case arises out of an aircraft accident which occurred on or about November 6, 1997, near Miton, Utah. This action was brought by the survivors of the pilot-in-command for the flight. Claims have been brought against the Piper Trust, the successor to the aircraft manufacturer; Honeywell, the successor to the autopilot manufacturer; and West Star, a maintenance provider to the owner-operator of the aircraft. On or about August 24, 2001, Plaintiffs entered into a settlement agreement with the Piper Trust whereby the Trust paid Plaintiffs $1 million to settle Plaintiffs' claims. On May 12, 2003, Plaintiffs filed their Motion

1

for Dismissal Pursuant to F.R.C.P. 41(a)(2) of Defendant The Piper Aircraft Corporation Irrevocable Trust (the "Piper Trust").

On June 19, 2003, West Star filed its *Response to the Motion for Dismissal of Piper Trust*. West Star asserted that this Court should allow Plaintiffs to voluntarily dismiss the Piper Trust only upon the satisfaction of two conditions: (1) that the jury in this case be required to consider the fault of the Piper Trust; and, (2) that the Piper Trust not be dismissed until after it has responded to discovery requests by West Star.

Since the time of its Response, West Star has obtained the documents it requested. In light of those documents, West Star has attempted to take the video trial preservation deposition of the Piper Trust. The Piper Trust, however, has repeatedly refused to cooperate with requests to set a date and time for such deposition. On August 4, 2004, after the futility of West Star's requests was abundantly clear, West Star filed its Notice of 30(b)(6) Deposition of its intent to take the deposition of an authorized representative of the Piper Trust. On September 20, 2004, the Piper Trust filed its Motion for a Protective Order Barring the Rule 30(b)(6) Deposition.

## SUMMARY OF THE ARGUMENT

In the absence of an unqualified stipulation from Plaintiffs concerning the contents of the special verdict form, and given the lack of clarity of Utah precedent on this issue, this Court should expressly rule that the Piper Trust must remain as a defendant in the case or, alternatively, be dismissed only upon a ruling that the Piper Trust must be included on the special verdict form. Further, the Piper Trust must submit to a video trial preservation deposition respecting discoverable, non-privileged information related to its settlement with Plaintiffs and the cause of

2

the aircraft accident. Finally, Plaintiffs' settlement with the Piper Trust raises the risk of a double recovery by Plaintiffs, which Utah law prohibits. The parties should be required to brief the issue of how that settlement should be set-off from any award of damages by the jury.

## ARGUMENT

I.     **In the absence of an unqualified stipulation from Plaintiffs concerning the appearance of the Piper Trust on the special verdict form, and given the lack of clarity of Utah precedent on this issue, this Court should expressly rule that, before the Piper Trust can be dismissed from this case, the Piper Trust must be included on the special verdict form.**

Plaintiffs' motion to voluntarily dismiss the Piper Trust from this litigation is still pending before this Court. As West Star noted in its initial Response to that motion, the purpose of the rule requiring the court to review a plaintiff's motion to dismiss if the parties do not unanimously agree to support the dismissal is "'primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.'" County of Santa Fe v. Public Service Co. of New Mexico, 311 F.3d 1031, 1047 (10th Cir. 2002).

In its Response, West Star asked this Court to rule that, as a condition of the Piper Trust's dismissal, among other things, the Piper Trust must be listed on the special verdict form so that the jury may consider whether the Piper Trust was at fault in this accident and, if so, in what percentage. A failure to resolve this issue exposes West Star to the possibility that the fault of the Piper Trust, which stands in the shoes of the manufacturer of the aircraft at issue, would not be considered by the jury in this case. Such a result would truly "unfairly affect" West Star, as well as the other defendants in this case. County of Santa Fe, supra.

A close inspection of Utah statutes and case law reveals the possibility of confusion as to

3

what version of the applicable statute applies to the issue of whether the Piper Trust must appear

on the special verdict form.  In this Supplemental Response, West Star aims to avoid that

possibility.

The current version of Utah Code Ann. §78-27-39(1) provides as follows:

> <u>The trial court may, and when requested by any party shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable</u> to each person seeking recovery, to <u>each defendant</u>, and <u>to any other person whether joined as a party to the action or not</u> and whose identity is known or unknown to the parties to the action, including a person immune from suit who contributed to the alleged injury.

(Emphases added.)

Under the applicable statute, there is no question that, as a defendant, the Piper Trust

must be listed on the verdict form.  Plaintiffs now want to dismiss the Piper Trust from the suit

and at the same time add an evidentiary hurdle for the Defendants to clear before the jury can

consider the fault of the Piper Trust.

In a letter from Plaintiffs' counsel, Brian Kelly, to Mark Pottinger, dated August 4, 2004

(copy attached as Exh. A), Plaintiffs suggest that after dismissal of the Trust, §78-27-39(1) (set

forth above) requires the Court to include the Piper Trust on the special verdict form, but only so

long as any party requests it and presents at trial "some evidence that a 'percentage or proportion

of fault [is] attributable'" to the Piper Trust.  See <u>Kilpatrick v. Wiley, Rein & Fielding</u>, 37 P.3d

1130, 1143 (Ut. 2001).  "To demonstrate fault, the evidence must be capable of proving that the

individual or entity sought to be included on the special verdict form breached some duty owed

to the party seeking recovery."  <u>Kilpatrick, supra</u>.  Thus, Plaintiffs have informally agreed to

4

stipulate that the Piper Trust must be listed on the special verdict from but only so long as the Defendants clear this evidentiary hurdle. This "stipulation" improperly adds a layer to West Star's burden at trial.

Plaintiffs named the Piper Trust as a defendant in this suit. Plaintiffs developed a sophisticated technical analysis as to why the accident aircraft was flawed and why the Piper Trust was responsible for the accident. Almost four years after the accident, the Plaintiffs reached a settlement with the Plaintiffs for $1 million. (A copy of the settlement agreement is attached to this Combined Response as Exh. C.) Against this backdrop, it is not credible for the Plaintiffs to now suggest there is any question as to the Piper Trust appearing on the verdict form. The reasonable approach, then, is either to leave the Piper Trust as a defendant or to condition the Piper Trust's voluntary dismissal on the inclusion of the Piper Trust on the special verdict form.

The version of the special verdict form statute quoted above is the version which is applicable to this case. The incident at issue in this case occurred on November 6, 1997; the most recent amendment to the statute was effective on May 3, 1999; and the complaint in this case was filed in September of 1999. However, because the 1999 amendment to the statute has been deemed procedural in nature, it is applicable to cases <u>pending</u> at the time of its enactment. <u>See</u> <u>Kilpatrick</u>, 37 P.3d at 1142. It follows that the amendment must therefore be applicable to cases which were filed <u>after</u> the amendment's enactment, including this one.

While <u>Kilpatrick</u> appears dispositive of the issue of whether the Piper Trust can appear on the special verdict form, regardless of whether it is dismissed from this case, <u>Kilpatrick</u> is also

the source of potential confusion on this issue.  This is because <u>Kilpatrick</u> misquotes the <u>prior</u> version of the statute quoted above.  Prior to 1999, §78-27-39(1) provided that the persons who could be listed on the special verdict form were "each person seeking recovery," "each defendant," and "any person immune from suit who contributed to the alleged injury." §78-27-39(1), Utah Code Ann. (1998).  A "person immune from suit" is, essentially, an employer or a governmental entity or employee. §78-27-37(3), Utah Code Ann. (1998).  However, rather than "any person immune from suit who contributed to the alleged injury," <u>Kilpatrick</u>, misquotes this portion of the prior statute as "any person who contributed to the injury."  The omission of the phrase "immune from suit" is significant and, in the conduct of a review of Utah law on this issue, potentially confusing.

Because of the possibility of confusion as to which statute applies and, consequently, as to whether the Piper Trust must be listed on the special verdict form if it is dismissed from this litigation, and because Plaintiffs have yet to make a useful stipulation on this issue, West Star requests that this Court enter an order that the Piper Trust will be listed on the special verdict form or remain as a Defendant.

II.    **The Piper Trust must allow West Star to examine a representative of the Piper Trust about non-privileged matters in a videotaped trial preservation deposition.**

In its Notice of 30(b)(6) Deposition, West Star gave notice of its intent to take the trial preservation deposition of an authorized designee, officer, director, and/ or employee of the Piper Trust who was most knowledgeable on the evaluation of  claims made against the Piper Trust, particularly the claim made by Plaintiffs.  As the Piper Trust is well aware, the

6

information sought by West Star pertains to the Trust's handling or processing of Plaintiffs' trust claim, including <u>technical</u> information about the cause of the accident provided to the Piper Trust by Professor Ronald Stearman, a designated expert for Plaintiffs in this case.

In his report dated September 2, 1999, Professor Stearman listed numerous defective design features of the Piper  PA-34-200T aircraft, the Piper model that is involved in this case. Professor Stearman then opined that, among other things, "the nose cone and tail assemblies of the accident aircraft are defective and that these defects were a proximate cause of the catastrophic in-flight break-up" of the aircraft in this case.  (Stearman Report, 9/2/99, pp. 5-6, 8.) (A copy of Professor Stearman's 9/2/99 report is attached as Exh. B.)  Professor Stearman also opined as follows:

> In my opinion, Piper failed to disclose these defects to the FAA during certification or otherwise and Piper has either fraudulently misrepresented to, or concealed and withheld from, the FAA information which is and was relevant and material to certification, airworthiness and continued airworthiness of the accident model aircraft.  In so doing, Piper has not only designed, but also perpetuated for use by the consuming public, a defective and dangerous product.  Had this information been disclosed, the aircraft should not have been certified.

(Stearman 9/2/99 Report, p. 8).

Presumably on the basis of this information, the Piper Trust settled with Plaintiffs. However, against the Defendants remaining in the litigation, Plaintiffs now assert a different cause of the accident, that is, that there was a problem with the  KFC 200 autopilot.

Before considering the applicability of the attorney-client privilege or work-product privilege, it is important to note that, if the Piper Trust were to remain a party to this litigation West Star could simply call the trust representative as a witness.  Once the Piper Trust is

dismissed, however, the Piper Trust and its representative will be beyond this Court's power to compel trial attendance. To allow West Star to examine the Piper Trust representative in a trial preservation deposition is a necessary and proper way to allow the Piper Trust to be dismissed from the suit without causing significant prejudice to West Star. Justice requires the "imposition of [this] curative condition." County of Santa Fe, supra.

In its Motion for Protective Order, the Piper Trust contends that West Star is not entitled to depose a representative of the Piper Trust because "the only evaluation of [the Plaintiffs'] claims was done by the undersigned," Courtney R. Bateman, Esq., of Dombroff & Gilmore, P.C. (Memorandum of Supporting Authorities, Motion for Protective Order, unnumbered p. 3). However, as is plain from the Notice of 30(b)(6) Deposition itself, West Star does not wish to depose Mr. Bateman. Nor does West Star seek discovery of any legal analysis or evaluation done by Mr. Bateman or anyone else. Rather, West Star seeks discovery and trial testimony concerning the Piper Trust's: (1) processing of claims, including the Plaintiffs' claim; (2) evaluation of technical information about the cause of the subject accident; and, (3) the resolution of Plaintiffs' claim against the Trust. The information sought by West Star is not protected by an attorney-related privilege and is discoverable. Accordingly, the Piper Trust's Motion for Protective Order should be denied.

FRE 501 provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or] person . . . shall be determined in accordance with State law." Generally, when the law of privilege of more than one state may apply, a federal court sitting in diversity applies the law of

the forum state to determine which state privilege law applies. See Samuelson v. Susen, 576

F.2d 546, 550-51 (3rd Cir. 1978). When, as here, the law governing the claims of a case is the

law of Utah, then "whether a privilege exists" to preclude West Star from deposing a

representative of the Piper Trust "must be determined by Utah law," not Florida law, as the Piper

Trust asserts in a footnote in its Motion for Protective Order. Scott v. Hammock, 133 F.R.D.

610, 612 (D. Ut. 1990). See also Lifewise Master Funding v. Telebank, 206 F.R.D. 298, 302 (D.

Ut. 2002). The burden is on the party asserting the privilege, here, the Piper Trust, to show that

the privilege applies. See Lifewise Master Funding, 206 F.R.D. at 303.

  In Utah, a "client has a privilege to refuse to disclose and to prevent any other person

from disclosing confidential communications made for the purpose of facilitating the rendition of

professional legal services to the client between the client and the client's representatives,

lawyers, [and] lawyers' representatives . . . ." U.R.E. 504(b). A "communication" "includes

advice given by the lawyer in the course of representing the client and includes disclosures of the

client and the client's representatives to the lawyer or the lawyer's representative incidental to

the professional relationship." U.R.E. 504(a)(5). A communication is "confidential" if "not

intended to be disclosed to third persons other than those to whom disclosure is in furtherance of

the rendition of professional legal services to the client or those reasonably necessary for the

transmission of the communication." Thus, the attorney-client privilege "applies only where the

communication is confidential and relates to the legal services." Lifewise Master Funding, 206

F.R.D. at 302.

  The information sought by West Star in a deposition of the Piper Trust representative

9

meets none of these criteria for the attorney-client privilege.  None of the information sought

touches upon any communication between the Piper Trust and its attorneys.  The Piper Trust has

interpreted the Notice for Deposition in this fashion, but that is not what the Notice, and its

attached Exhibit A, which lists the issues to be explored, actually say.  West Star submits that the

determination of whether the Notice for Deposition should be quashed must be based on the

information actually sought by West Star, and not on the Piper Trust's characterization of that

information.

 Specifically, the Piper Trust asserts that "[a]ny testimony concerning the thought

processes of the Trustee in settling claims would require the disclosure of advice and evaluations

provided by counsel.  Accordingly, there is no information that this deposition seeks that is not

covered by the attorney-client privilege."  (Memorandum of Supporting Authorities, Motion for

Protective Order, unnumbered p. 4) (emphases added).  Thus, according to the Piper Trust, even

the name of the Trustee, a general description of the process of making a claim against the Piper

Trust, and every other question that could be posed to the Trustee is somehow covered by the

attorney-client privilege.  The Piper Trust's sweeping generalizations, and its assertion that the

sky will surely fall if its Motion for Protective Order is not granted, do not serve to meet the

Piper Trust's burden of proving the applicability of the attorney-client privilege to the

information sought by West Star from the Piper Trust representative.  See Lifewise Master

Funding, supra.

 The Piper Trust claims that, in addition to the attorney-client privilege, the Notice

for Deposition should be quashed based on the "attorney work product privilege."  The

Trust then argues that the work product doctrine of the State of Florida should apply.

However, it is <u>federal</u> law, not Florida law, that applies to this issue.  <u>See</u> <u>Lifewise</u>

<u>Master Funding</u>, 206 F.R.D. at 302 (although, in diversity action, Utah law determines

applicability of attorney-client privilege, the "claim of work product privilege . . . is

determined by federal law").  Again, the burden is on the claimant of the privilege, that

is, the Piper Trust, to show that the privilege applies.  <u>See</u> <u>Lifewise Master Funding</u>, 206

F.R.D. at 304.  "A mere allegation of its application is insufficient."  <u>Lifewise Master</u>

<u>Funding</u>, <u>supra</u>.

Here, the Piper Trust's challenge to the Notice of Deposition on the basis of "attorney

work product privilege" is that West Star is attempting to use a "back door" to access the

"mental impressions" of the Piper Trust's attorney.  (Memorandum of Supporting Authorities,

Motion for Protective Order, unnumbered p. 7).  Again, West Star seeks to depose the

representative of <u>the Trust</u>, not Mr. Bateman, and does not wish to reach the "mental

impressions" of counsel.

The Piper Trust's general allegation that the attorney-client privilege and/or the attorney

work product privilege applies to <u>everything</u> that the Piper Trust representative may say in a

deposition, such that it is improper that the deposition even take place at all, is simply

unpersuasive.  Indeed, as the Piper Trust notes, West Star has been provided with a copy of the

Piper Trust Agreement, which contains the Piper Trust's claims procedures, and a copy of the

settlement agreement between Plaintiffs and the Piper Trust.  The provision of these documents

to West Star belies the Piper Trust's assertion that anything the Trust representative may have to

11

say, including establishing the admissibility of produced documents is rendered undiscoverable by either the attorney-client privilege or the attorney work product privilege.

Finally, contrary to the Piper Trust's assertions, the information sought by West Star is absolutely relevant to the issues in this case. The information sought pertains to the cause of the accident and the impeachment of Plaintiffs' evidence to be presented at trial. The central issue at trial will be who is at fault for causing the accident. The Piper Trust cannot be permitted to impede the search for truth and prevent discovery of critical information on this central issue, especially based on a spurious assertion that such information is irrelevant. That the design of the Piper aircraft in this case was defective and was the "proximate cause of the catastrophic in-flight break-up" of this aircraft, as Professor Stearman opined in his Report, and the Piper Trust's evaluation of this opinion, is certainly relevant to Plaintiffs' alternative claim that the KFC 200 autopilot caused the accident in this case.

For all of these reasons, the Piper Trust's Motion for Protective Order should be denied and the Piper Trust ordered to make available an authorized representative for examination in a videotaped trial preservation deposition. Further, given the Piper Trust's approach to the deposition thus far, West Star anticipates the need for assistance from the Magistrate, at least by telephone, during the taking of the deposition. The Magistrate can assure the efficient conclusion of the deposition by being available to rule on assertions of privilege by the Piper Trust so that non-privileged information may actually be recorded for trial presentation. Without such assistance, the allowance of the deposition, standing alone, may be a hollow gesture, and the deposition may be the subject of additional motions filed in this Court. Accordingly, West

Star requests the Court order that the deposition occur at a time and place convenient for the

Magistrate to be available, at least by telephone, to deal with objections that may be made during

the deposition.

**III.   Plaintiffs' settlement with the Piper Trust raises the risk of a double recovery by Plaintiffs, which Utah law prohibits, and so the parties should be required to brief, and this Court should resolve prior to trial, the issue of how that settlement should be set-off from any award of damages by the jury.**

A third issue related to the dismissal of the Piper Trust from this litigation is the manner

by which the settlement of $1 million which the Piper Trust has agreed to pay Plaintiffs must be

set-off from any award of damages in this case.  Prior to any ruling from this Court that the Piper

Trust may be dismissed from this case, the issue of set-off should be addressed.

In Utah, it is "well established that there can be but one satisfaction for injuries sustained

in one wrong." Green v. Land Co., 206 P.2d 626, 627 (Ut. 1949); see also Jorgenson v. Aetna

Casualty & Surety Co., 769 P.2d 809, 813 (Ut. 1988)(citing Green); Western Steel Co. v. Travel

Batcher Corp., 663 P.2d 82, 84 (Ut. 1983)(citing Green).  Until 1986, Utah's Comparative

Negligence Act expressly provided that a release by one joint tortfeasor "reduces the claim

against the other tortfeasors by the greater of:  (1) the amount of consideration paid for that

release; or (2) the amount or proportion by which the release provides that the total claim shall

be reduced." See Krukiewicz v. Draper, 725 P.2d 1349, 1350 (Ut. 1986).  However, this statute

was amended, along with the entire tort liability legislative scheme, in 1986.  See Utah Code

Ann. §78-27-42 (2003).  The new statute does not address the issue of how to treat a settlement

by one of multiple defendants. See Utah Code Ann. §78-27-42 (2003).

In the absence of a controlling statute, the Utah Supreme Court looks to generally

accepted common law rules.  See Jorgenson, 769 P.2d at 811.  The common law rule in Utah is that a plaintiff may not recover more than once for the same injuries; in short, double recovery is not permitted.  See Green, supra; Jorgenson, supra; Western Steel Co., supra.  Accordingly, when a plaintiff has settled with one of the defendants and goes to trial against other defendants, the plaintiff can recover at trial "only the difference between the total damages" stipulated or proven by the plaintiff at trial "less the settlement" with the settling defendant.  Hahn v. Armco Steel Co., 601 P.2d 152, 159, 160-61 (Ut. 1979)(total damages to which parties stipulated or for which plaintiff presented evidence at trial, and which jury credited, was $1,578,364.99; "plaintiff can recover only the difference between the total damages of $1,578,364.99 less the settlement of $825,000.00").

Defendant West Star therefore requests the Court to rule, prior to a dismissal of the Piper Trust from this litigation, that, pursuant to Utah law, any award of damages to Plaintiffs by the jury must, before judgment is entered, be set-off by Plaintiffs' $1 million settlement with the Piper Trust in a manner consistent with Hahn, supra.  The precise manner of calculating the set-off involves nuanced issues of Utah public policy and basic fairness to Plaintiffs and Defendants which should not be argued in the heat of the pronouncement of a jury award.  West Star therefore requests that this Court order the parties to brief the issue of how the set-off should be calculated so that the Court may resolve the issue prior to trial.

### CONCLUSION

For these reasons, Defendant West Star Aviation, Inc., requests that this Court deny Plaintiffs' Motion for Dismissal unless the conditions set forth above are satisfied; deny

14

Defendant The Piper Aircraft Corporation Irrevocable Trust's Motion for Protective Order

Barring the Rule 30(b)(6) Deposition Sought By Defendant West Star Aviation, Inc.; and order

that the parties brief the issue of the manner by which the set-off of Plaintiffs' settlement with

the Trust from any jury award of damages should be calculated.

Dated this _____ 26th _____ day of October, 2004.

Respectfully Submitted:

L. Richard Musat, Esq.
Mark A. Pottinger, Esq.
Treece, Alfrey, Musat & Bosworth, P.C.
999 18th Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-292-2700
Fax: 303-295-0414

-and-

_____
R. Brent Stephens, Esq. (#3098)
Snow, Christensen & Martineau, P.C.
10 Exchange Place, Eleventh Floor
P.O. Box 45000
Salt Lake City, Utah 84145
Telephone: 801-521-9000
Fax: 801-363-0400
ATTORNEYS FOR DEFENDANT WEST STAR
AVIATION, INC.

15

## CERTIFICATE OF SERVICE

I hereby certify that on October _26th_, 2004, a true and correct copy of the foregoing **DEFENDANT WEST STAR AVIATION, INC.'S COMBINED SUPPLEMENTAL RESPONSE TO PLAINTIFFS' RULE 41(a)(2) MOTION FOR DISMISSAL OF PIPER AIRCRAFT CORPORATION IRREVOCABLE TRUST; RESPONSE TO DEFENDANT THE PIPER AIRCRAFT CORPORATION IRREVOCABLE TRUST'S MOTION FOR A PROTECTRIVE ORDER BARRING THE RULE 30(b)(6) DEPOSITION SOUGHT BY DEFENDANT WEST STAR AVIATION, INC.; AND MEMORANDUM IN SUPPORT OF MOTION FOR BRIEFING AND RULING ON ISSUE OF SETTLEMENT SET-OFF** was placed in the United States mail, postage prepaid, and addressed to the following:

Arthur Alan Wolk, Esq.
Richard E. Genter, Esq.
Wolk & Genter
1710-12 Locust Street
Philadelphia, Pennsylvania 19103

Robert S. Young, Esq.
Suite 800, McIntyre Building
68 South Main Street
Salt Lake City, Utah 84101

Tracy H. Fowler, Esq.
Snell & Wilmer, LLP
15 West South Temple, Suite 12000
Salt Lake City, Utah 84101

Mark A. Dombroff, Esq.
Courtney R. Bateman, Esq.
Dombroff & Gilmore
1025 Thomas Jefferson Street, N.W.
Suite 300 West
Washington, D.C. 20007

David B. Watkiss, Esq.
Brett J. Delporto, Esq.
Ballard, Spahr, Andrews & Ingersoll, LLP
One Utah Center, Suite 600
201 South Main Street
Salt Lake City, Utah 84111

Kevin Murphy, Esq.

Adler, Murphy & McQuillen
1 North LaSalle Street, 23rd Floor
Chicago, Illinois 60602

Ralph R. Mabey, Esq.
Leboeuf Lamb Greene & MacRae, LLP
136 S. Main Street, Suite 1000
Salt Lake City, Utah 84101

Michael Zaccheo, Esq.
Richards Brandt Miller & Nelson
50 South Main Street, #700
PO Box 2465
Salt Lake City, Utah 84110

R. Brent Stephens, Esq.
Snow, Christensen & Martineau
10 Exchange Place
PO Box 45000
Salt Lake City, Utah 84145-5000